IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

| | | |
|---|---|---|
| MARIO ALMANZA, et al. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 3:10-CV-311 |
| | ) | |
| BAIRD TREE SERVICE COMPANY, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This civil action is before the court on the "Objection to Magistrate Judge's Memorandum and Order" [doc. 66] and "Supplemental Objection to Magistrate Judge's Memorandum and Order" [doc. 67] filed by defendant Baird Tree Company, Inc. ("Baird"). Plaintiffs have filed a response [doc. 68], and Baird has submitted a reply [doc. 69] and a supplemental reply [doc. 70]. Plaintiffs filed a motion for a protective order [doc. 54] which was referred to the magistrate judge for his consideration and determination. In their motion, plaintiffs sought an order preventing the discovery of plaintiffs' immigration status. The magistrate judge held a hearing prior to issuing his memorandum and order. In his memorandum and order [doc. 65], the magistrate judge found that a protective order was appropriate based upon relevant authority and the claims as presently asserted by plaintiffs. For the reasons that follow, Baird's objections will be overruled.

*Standard of Review*

Baird contends that this court must conduct a de novo review of the magistrate judge's ruling, citing as authority a case involving objections made to a report and recommendation under 28 U.S.C. § 636(b)(1)(C). This court referred a non-dispositive pretrial discovery motion to the magistrate judge, and he appropriately issued a memorandum and order not a report and recommendation. The correct standard for review of such a ruling is set forth in 28 U.S.C. § 636(b)(1)(A) and Federal Rule of Civil Procedure 72(a). The review is not de novo. "This court cannot reverse a magistrate's opinion on a non-dispositive matter unless the magistrate's decision was clearly erroneous or contrary to law." *Haworth, Inc. v. Herman Miller, Inc.,* 162 F.R.D. 289, 291 (W.D. Mich. 1995) (citing *Brown v. Wesley's Quaker Maid, Inc.*, 771 F.2d 952 (6th Cir. 1985); *Parry v. Highlight Indus., Inc.,* 125 F.R.D. 449, 450 (W.D. Mich. 1989)). The "clearly erroneous" standard is applied to factual findings by the magistrate judge while the less stringent "contrary to law" standard is applied to the magistrate judge's legal conclusions. *Haworth,* 162 F.R.D. at 291 (citing *Gandee v. Glaser,* 785 F. Supp. 684, 686 (S.D. Ohio 1992). "A finding is clearly erroneous only when the reviewing court is left with a definite and firm conviction that a mistake has been committed." *In re Search Warrants Issued August 29, 1994*, 889 F. Supp. 296, 298 (S.D. Ohio 1995) (citing *Heights Cmty. Cong. v. Hilltop Realty, Inc.,* 774 F.2d 135, 140 (6th Cir. 1985); *Shivers v. Grubbs*, 747 F. Supp.

2

434 (S.D. Ohio 1990)). This court exercises independent judgment as to the magistrate judge's legal conclusions. *Gandee,* 785 F. Supp. at 686. "This Court's review under the 'contrary to law' standard is 'plenary,' and it may overturn any conclusions of law which contradict or ignore applicable precepts of law, as found in the Constitution, statutes, or case precedent." *Id*. (internal quotation marks and citations omitted).

*Analysis*

Baird first objects that the motion is procedurally flawed and that the magistrate judge's order should never have been entered. According to Baird, the motion for protective order is fatally flawed because it never contained a certification that the movant conferred or attempted to confer in good faith with the parties to resolve the issue as required by Fed. R. Civ. P. 26(c). The magistrate judge noted that the motion for protective order did not have a Rule 26 certification. He then concluded: "Nonetheless, it appears that the parties have discussed the protective order issue, and the Court finds it appropriate to waive this requirement in this matter."

The court finds no error in the magistrate judge's decision. At this juncture to overturn the magistrate judge's decision on a procedural technicality would be a waste of the court's and parties' time and resources and an exercise in futility. The parties are completely polarized on the discovery matter that is in dispute. If the court sent the parties back to start over, they would return with nothing more than a certification that they

3

conferred in good faith and failed to reach an agreement on the issue. This would leave all concerned at precisely the same place they are at this point in time, except the parties would have expended additional time and resources for naught. Such a course is unreasonable and unacceptable. Baird's first objection will be overruled.

Baird's second objection goes to the merits of the magistrate judge's decision. For the reasons that follow, Baird's second objection will also be overruled. In the memorandum and order, the magistrate judge noted that the issue is one of first impression in this court, although other courts have addressed the same or a similar issue. He also noted that the Sixth Circuit has not considered the issue in light of the case that Baird considers dispositive of the issue, *Hoffman Plastic Compounds, Inc. v. N.L.R.B*, 535 U.S. 137 (2002). The magistrate judge summarized the *Hoffman* case which involved an NLRB order that required an employer to compensate a worker named Jose Castro with back pay from the date of his termination to the date the employer discovered Castro's undocumented status. *Id*. at 142. The Supreme Court concluded that "awarding back pay to illegal aliens runs counter to policies underlying [the Immigration Reform and Control Act of 1986]." *Id*. at 149. Thus, the Court found that the order conflicted with the policies of the IRCA and set it aside.

In his analysis regarding the protective order, the magistrate judge considered the plaintiffs' authorities, which do not permit the discovery of FLSA plaintiffs' immigration status. He further noted that in light of *Hoffman*, courts have held that immigration status

4

is not relevant where a worker seeks wages previously earned through actual work as opposed to the situation in *Hoffman* that involved the award of reinstatement and backpay to an undocumented alien for years of work he did not perform. *See, e.g., Flores v. Amigon*, 233 F. Supp. 2d 462 (E.D.N.Y. 2002) (*Hoffman* did not deal with plaintiffs who had performed work for which they were seeking unpaid wages). The magistrate judge made the following finding in making his ruling:

> The Plaintiffs have represented to the Court that they seek only back wages and do not seek compensation for work that was not or has not been performed. Thus, the Court finds that under pertinent statutes and case law their immigration status is not relevant to their claims, and therefore, the Plaintiffs will not be required to respond to discovery relating to their immigration[] status. Nonetheless, if the Plaintiffs amend their pleadings to include prayers for relief that would make their immigration status relevant based upon the United States Supreme Court's holding in Hoffman, the Baird Defendants may move the Court to make exceptions to this order. In so doing, the Baird Defendants must direct the Court to specific requests or inquiries to which it believes the Plaintiffs should be made to answer or respond.

Plaintiffs have brought this action pursuant to the Fair Labor Standards Act ("FLSA") for *inter alia* unpaid wages and overtime pay as well as a claim for retaliation pursuant to 29 U.S.C. § 215(a)(3). Numerous courts have made clear that the FLSA protects employees regardless of their immigration status. *See Flores v. Albertsons, Inc.*, No. CV0100515AHM(SHX), 2002 WL 1163623, at *5 (C.D. Cal. Apr. 9, 2002) ("Federal courts are clear that the protections of the FLSA are available to citizens and undocumented

5

workers alike.") (citing *Patel v. Quality Inn South*, 846 F.2d 700, 706 (11th Cir. 1988) ("Nothing in the FLSA suggests that undocumented aliens cannot recover unpaid minimum wages and overtime under the act. . . .")); *Contreras v. Corinthian Vigor Ins. Brokerage, Inc.*, 25 F. Supp. 2d 1053, 1056 (N.D. Cal. 1998) ("There is no question that the protections provided by the FLSA apply to undocumented aliens."); *Amigon*, 233 F. Supp. 2d at 463; *Zavala v. Wal-Mart Stores, Inc.*, 393 F. Supp. 2d 295, 323 (D.N.J. 2005) ("[T]his Court only joins the growing chorus acknowledging the right of undocumented workers to seek relief for work already performed under the FLSA.").

In viewing the post-*Hoffman* decisions, especially FLSA cases in which defendant employers seek information regarding the immigration status of the plaintiffs, the clear weight of authority is that such information is irrelevant to the issues in such cases, and it is not discoverable. The magistrate judge discussed in his memorandum and order *Amigon*, 233 F. Supp. 2d 462[1]; *Liu v. Donna Karan Int'l, Inc.*, 207 F. Supp. 2d 191 (S.D.N.Y. 2002); and *Galaviz-Zamora v. Brady Farms, Inc.*, 230 F.R.D. 499 (W.D. Mich. 2005). All three cases involved FLSA claims and employers who sought the immigration status of the plaintiffs in discovery. The courts in each case distinguished *Hoffman* and

---

[1] The district court in *Amigon* pointed out "that the Department of Labor has indicated that *Hoffman* will not affect the enforcement of the FLSA." (citing Fact Sheet #48: Application of the U.S. Labor Laws to Immigrant Workers: Effect of *Hoffman Plastic* decision on laws enforced by the Wage and Hour Division). *Amigon*, 233 F. Supp. 2d at 464 n.1; *see also Zavala*, 393 F. Supp. 2d at 324 n.23 (quoting from Fact Sheet #48: "Supreme Court's concern [in *Hoffman*] with awarding back pay 'for years of work not performed, for wages that could not lawfully have been earned,' does not apply to work actually performed").

6

concluded that the discovery was not relevant and also recognized the possible risk of injury to the plaintiffs should such information be released.

In *Flores v. Albertsons, Inc.*, No. CV0100515AHM(SHX), 2002 WL 1163623, (C.D. Cal. Apr. 9, 2002), plaintiffs brought among others a claim under the FLSA for failure to pay overtime and other wages. The magistrate judge had denied defendant's motion to compel production of documents related to the immigration status of the plaintiffs. "In so doing, the Magistrate Judge found that there was an *in terrorem* effect to the production of such documents and that the immigration status of Plaintiffs was not relevant to any claim or defense. The Magistrate Judge specifically rejected Defendant's contention that this information could somehow mitigate Albertson's liability." *Id*. at *5.[2] The district court distinguished *Hoffman* and concluded that it was not relevant to the subject case in which the plaintiffs were seeking unpaid wages, minimum wages and overtime premiums, under the FLSA. *Id*. Ultimately, the district court concluded that the magistrate judge's ruling was not clearly erroneous or contrary to law.

---

[2] Courts have denied discovery requests for immigration status based on the argument that it is needed to test the credibility or truthfulness of the plaintiff's representations. *Rengifo v. Erevos Enters., Inc.*, No. 06 Civ. 4266(SHS)(RLE), 2007 WL 894376 (S.D.N.Y Mar. 20, 2007) (In FLSA case court concluded that opportunity to test credibility of party based on representations made when seeking employment does not outweigh chilling effect that disclosure of immigration status has on employees seeking to enforce their rights); *David v. Signal Int'l, LLC*, 257 F.R.D. 114 (E.D. La. 2009) ("Credibility is always at issue. That, in and of itself, does not warrant an inquiry into the subject of *current* immigration status when such examination would impose an undue burden on private enforcement of employment discrimination laws.") (footnote omitted).

7

Another post-*Hoffman* case in which the immigration status of FLSA plaintiffs was found to be irrelevant is *Montoya v. S.C.C.P. Painting Contractors, Inc.*, 530 F. Supp. 2d 746 (D.Md. 2008). In *Montoya*, employees filed a putative class action for *inter alia* the employer's failure to pay wages for work performed and overtime. Defendant sought through discovery identifying information suggesting that plaintiffs may be illegal aliens. The district court discussed several of the courts that have determined that such requests "are both irrelevant and prejudicial." *Id*. at 749-50 (discussing *Flores v. Amigon*, 233 F. Supp. 2d 462; *Zeng Liu v. Donna Karan Int'l*, 207 F. Supp. 2d 191; *Galaviz-Zamora*, 230 F.R.D. 499). The district court concluded:

> This Court agrees with these other courts that the immigration status of a class representative is irrelevant in wage and hour cases, in light of FLSA's coverage of all workers – undocumented or not. Courts have noted that such a position not only benefits the individual workers, but advances the goals of the FLSA. "Permitting an employer to circumvent the labor laws as to undocumented aliens 'permits abusive exploitation of workers' and 'creates an unacceptable economic incentive to hire undocumented workers by permitting employers to underpay them.'" *Flores*, 233 F. Supp. 2d at 464 (citing *Sure-Tan, Inc. v. NLRB*, 467 U.S. 883, 104 S. Ct. 2803, 81 L. Ed. 2d 732 (1984)).
>
> . . .
>
> This Court agrees with other courts that the probative value of such information as to any individual named plaintiff is outweighed by the prejudice that such inquiry would effect. . . . Since the FLSA affords relief regardless of immigration status, lack of legal immigration status cannot be a bar to recovery, or indeed named plaintiff status, as several courts have held.

*Montoya*, 530 F. Supp. 2d at 750-51 (citation omitted).

Another recent FLSA case in which defendants sought information regarding the immigration status of plaintiffs is *Villareal v. El Chile, Inc.*, 266 F.R.D. 207 (N.D. Ill. 2010). Defendants argued that the information was relevant to their defense and that any undocumented workers were not "employees" under the FLSA, and even if they were, they would not be entitled to the monetary relief they sought. A protective order was granted "because courts that have considered the issue have held - uniformly as far as the cases cited by the parties or this court's research discloses - that immigration status is not relevant to a claim under the FLSA or unpaid wages for work previously performed." *Id*. at 212.[3] The court held that "[d]iscovery regarding plaintiffs' immigration status is not relevant to any claim or defense." *Id*. at 214.

The court recognized that the Seventh Circuit had not expressly addressed the issue but pointed out that "[s]everal district courts in [the Seventh] [C]ircuit have, however, found a plaintiff's immigration status irrelevant to the plaintiff's claim for unpaid wages under the FLSA." *Id*. at 213 (citing *Hernandez v. City Wide Insulation of Madison, Inc.*, No. 05 C 0303, 2006 WL 3474182 (E.D. Wis. Nov. 30, 2006); *Ponce v. Tim's Time, Inc.*, No. 03 C 6123, 2006 WL 941963 at *1 (N.D. Ill. Mar. 16, 2006); *Cortez v. Medina's Landscaping*, No. 00 C 6320, 2002 WL 31175471 (N.D. Ill Sept. 30, 2002)). The court

---

[3] The reported opinion was issued by the magistrate judge to set out the basis for the rulings previously made at a hearing on the parties' discovery motions. *Id*. at 208.

9

noted that the plaintiffs were seeking unpaid wages for work already performed, unlike in *Hoffman*, and stated that district court cases in the Seventh Circuit have not viewed *Hoffman* "as precluding an undocumented worker's claim under the FLSA for unpaid wages for work already performed." *Villareal*, 266 F.R.D. at 214 (citing *Cortez*, 2002 WL 31175471 at *1 ("Hoffman does not hold that an undocumented alien is barred from recovering unpaid wages for work actually performed")).

In addition, the court noted that "a number of courts have recognized that allowing discovery of a plaintiff's immigration status would have an *in terrorem* effect likely to deter FLSA claims." *Id*. "If forced to disclose their immigration status, most undocumented aliens would withdraw their claims or refrain from bringing an action . . . in the first instance. This would effectively eliminate the FLSA as a means for protecting undocumented workers from exploitation and retaliation." *Amigon*, 233 F. Supp. 2d at 465 n.2 (internal citations omitted).

Unquestionably, the weight of authority holds that in an FLSA case as this one is, the immigration status of the plaintiffs is irrelevant. Baird's heavy reliance on *Hoffman* is misplaced as demonstrated by the case law discussed above in which its holding has been distinguished in the context of FLSA cases.

Baird, however, submits what it says are additional authorities to support its position. It has filed information regarding Tennessee's new lawful employment act that went into effect after the inception of this lawsuit. The act is designed to strengthen

10

employment verification with specific requirements that must be met when employees are hired, and it subjects employers to penalties. Baird also points the court to the recent Supreme Court decision in *Arizona v. United States*, 132 S. Ct. 2492 (2012) and *Chamber of Commerce of United States v. Whiting*, 131 S. Ct. 1968 (2011) as further demonstration that it is entitled to the plaintiff's immigration status. These materials, which deal with issues concerning the country's current immigration policy, do not, however, support Baird's discovery request.

None of this "new" material brings anything to the analysis or supports Baird's position. The state statute and Supreme Court cases have nothing to do with the FLSA or the issue before this court. What is relevant is the applicable case law, which demonstrates that the FLSA applies to all employees, regardless of their immigration status and that an employee's immigration status is not relevant to the issues and defenses in an FLSA case. Further, the case law demonstrates that enforcement of the FLSA as to undocumented workers furthers the policy of the Immigration Reform and Control Act ("IRCA").

> The federal immigration policy embodied in IRCA does not conflict with the requirement that an employer compensate undocumented workers at the statutorily required rate for work that they already have performed. Rather, application of the FLSA to undocumented and documented workers alike supports the policies of IRCA. If the FLSA did not cover such workers, "employers would have an incentive to hire them. . . . By reducing the incentive to hire such workers the FLSA's coverage of undocumented aliens helps discourage illegal immigration and is thus fully consistent with the objectives of the IRCA." *Patel*, 846 F.2d at 704-05 (emphasis omitted);

11

> *accord Flores v. Amigon*, 233 F. Supp. 2d 462, 464 (E.D.N.Y. 2002) (noting that application of FLSA to undocumented workers eliminates any financial advantage to hiring illegal workers and encourages employers to comply with IRCA's requirement to investigate and confirm immigration status.)

*Villareal*, 266 F.R.D. at 214.

Baird also asserts that plaintiffs seek other relief pursuant to § 216 of the FLSA and that implicates *Hoffman* and entitles them to the disputed discovery. The court does not agree. At this juncture, it is clear that the FLSA applies whether or not the plaintiffs are documented or undocumented and their immigration status is not relevant to the issues or defenses in the case. The extent of plaintiffs' recovery under the FLSA remains for another day. However, the court observes in passing the following:

> Pursuant to § 216(b) of the FLSA, "the court in such actions shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. 216(b). An award of attorney's fees under FLSA § 216(b) is mandatory, but the amount awarded is within the discretion of the District Court.

*Farmer v. Ottawa Cnty.*, Nos. 98-2321, 99-1047, 2000 WL 420698, at *7 (6th Cir. Apr. 13, 2000) (citation omitted); *see also Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir. 1994).

In addition, it has been held that *Hoffman* "did not specifically foreclose all remedies for undocumented workers under either the National Labor Relations Act or other comparable federal labor statutes." *Escobar v. Spartan Sec. Serv.*, 281 F. Supp. 2d 895,

12

897 (S.D. Tex. 2003). In *Singh v. Jutla & C.D. & R's Oil, Inc.*, 214 F. Supp. 2d 1056 (N.D. Cal. 2002), an illegal-alien employee filed an FLSA retaliation claim alleging that her employer reported her to the Immigration and Naturalization Service after she filed a wage claim. The defendant filed a motion to dismiss, which the district court denied. The defendant contended that *Hoffman* barred plaintiff's action and that *Hoffman* went beyond carving out the remedy of back pay but that it has a broader significance affecting the remedies available to undocumented workers under the FLSA. The district court stated:

> Though *Hoffman* prevents an undocumented worker from seeking back pay, it does not preclude an undocumented worker from seeking *any* form of relief, as shown through the Court's granting of both injunctive and declaratory relief. While *Hoffman* did not address the remedies of compensatory and punitive damages, which are central here, given the factual circumstances of this case and the interplay with national immigration policy, the Court declines to extend *Hoffman* to bar the remedies that plaintiff seeks.
> . . .
> Allowing an undocumented worker to bring an anti-retaliation claim under the FLSA is consistent with the immigration policies underlying the IRCA. Congress enacted the FLSA to eliminate substandard working conditions by requiring employers to pay their employees a statutorily prescribed minimum wage and prohibiting employers from requiring their employees to work more than forty hours per week unless the employees are compensated at one and one half times their regular hourly rate. Congress enacted the IRCA to reduce illegal immigration not only to eliminate the economic incentive for illegal workers to come to this country, but also to eliminate employers' incentive to hire undocumented workers by imposing sanctions on employers who hire such workers.

*Id*. at 1061-62 (citation omitted).

Plaintiffs have brought an action pursuant to the FLSA. The fact that they are seeking other remedies under that statute besides the unavailable backpay does not make the discovery Baird seeks relevant nor does it make the protective order improper.

For all of the foregoing reasons, the magistrate judge's decision to grant the motion for a protective order was not clearly erroneous or contrary to law. Baird's objections and supplemental objections to the magistrate judge's ruling will be overruled. The protective order will stay in effect, and the defendants will not be permitted to obtain information concerning the immigration status of the plaintiffs. An order consistent with this opinion will be entered.

ENTER:

        s/ Leon Jordan
United States District Judge