IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

MARIO ALMANZA, et al.              )
                                   )
              Plaintiffs,          )
                                   )
                                   )
v.                                 )        No. 3:10-CV-311
                                   )
BAIRD TREE SERVICE COMPANY, INC.,  )
                                   )
              Defendant.           )

## MEMORANDUM OPINION

This civil action is before the court on the "Motion to Dismiss/Motion to Strike

Counterclaim" [doc. 75] filed by counter-defendant HR Solutions of America, LLC ("HRS").

Cross-defendants/counter-plaintiffs Baird Tree Company, Inc. and Bobby D. Baird

(collectively "Baird") have filed a response in opposition [doc. 77],[1] and HRS has submitted

a reply [doc. 78]. Oral argument is unnecessary, and the motion is ripe for the court's

determination. For the reasons that follow, the motion will be granted in part and denied in

part.

---

[1] Baird's response including the affidavit of Bobby Baird totals 48 pages, which exceeds the
25-page limit set by this court's local rules. Baird did not seek permission to file this brief that is
in excess of the limit set by Local Rule 7.1(b). The court will not accept any additional briefs that
exceed the page limit unless counsel has first sought permission prior to filing.

*Background*

On July 19, 2010, the plaintiffs filed suit against Baird Tree Company and shortly afterward filed an amended complaint adding Bobby Baird as a defendant. The plaintiffs assert violations of the Fair Labor Standards Act ("FLSA"), in part a failure to pay overtime compensation. Three months later, Baird filed a motion to dismiss or to add a necessary party in which it alleged that HRS was plaintiffs' employer and a necessary party. On April 28, 2009, Baird Tree Company and Bobby Baird as its president entered into a Professional Employer Organization Agreement ("PEOA" or "the Agreement") with HRS. Plaintiffs eventually filed a second amended complaint naming HRS as a defendant, although they denied HRS was their employer. On May 20, 2011, HRS filed a crossclaim for indemnity and breach of contract against Baird. Baird then filed a counterclaim against HRS, asserting numerous claims. HRS filed the motion to dismiss/strike which is presently before the court.

II.

*Standard of Review*

Motion to Dismiss – Rule 12(b)(6)

HRS has brought its motion in part pursuant to Federal Rule of Civil Procedure 12(b)(6). Rule 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." In resolving a motion under Rule 12(b)(6), the court must

"construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). "The factual allegations, assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'. . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "To survive a Rule 12(b)(6) motion to dismiss, plaintiff's pleading for relief must provide 'more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" *Bowman v. United States*, 304 F. App'x 371, 374 (6th Cir. 2008) (citing *Ass'n of Cleveland Fire Fighters*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555)).

Baird argues, however, that because HRS relies on the PEOA, the motion is converted into a motion for summary judgment. Baird is incorrect.

In addressing a motion under Rule 12(b)(6), the court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l*

3

*Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (citation omitted); *see also Gee v. UnumProvident Corp.*, No. 1:03-CV-147, MDL 1:03-MD-1552, 2005 WL 534873, at *7 (E.D. Tenn. Jan. 13, 2005) ("[I]f documents are attached to, incorporated by, or specifically referred to in the complaint, they are considered part of the complaint and the Court may consider them.") (citing *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997); *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)).  Specifically, "when a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment." *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335-36 (6th Cir. 2007). The PEOA is clearly integral to Baird's claims as it is the basis from which its claims arise. Therefore, reference to and reliance on the PEOA does not convert the motion to dismiss into a motion for summary judgment.

Baird also contends that HRS refers to other documents in the record of this case and this converts the motion into one for summary judgment.  HRS refers to certain documents in setting out the procedural background and in one instance to supporting documentation from a prior motion by Baird.  However, "[a] motion to dismiss is not automatically converted into a motion for summary judgment simply because a party submits exhibits or other materials beyond the pleadings." *Gudenas v. Cervenik*, No. 1:09CV2169, 2010 WL 987699, at *3 (N.D. Ohio Feb. 22, 2010) (citations omitted).  "It is well established that a District Court 'has complete discretion to determine whether or not to accept any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion.'"

4

*Barrett v. Harrington*, 130 F.3d 246, 253 (6th Cir. 1997) (citing 5A C. Wright & A. Miller,

*Federal Practice and Procedure: Civil 2d* § 1366, at 491-93 (1990) (footnotes omitted)); *see*

*also id*. "Where the court does not rely on such materials, or considers them irrelevant to

resolution of the merits of the motion, the court does not err in simply considering the motion

as a motion to dismiss." *Id*. (citations omitted). The court has reviewed the document

references made by HRS in its briefing and finds that the documents either state the

background of the case or are irrelevant to the merits of the motion and are not relied on by

the court.

One additional document outside the pleadings must be addressed. A f t e r

concluding that the pending motion is one for summary judgment, Baird argues that it is

entitled to a continuance pursuant to Fed. R. Civ. P. 56(d) and offers the affidavit of Bobby

Baird for the purpose of obtaining that continuance. The court will not consider this

affidavit. The pending motion is not a motion for summary judgment, and therefore a Rule

56(d) continuance is unnecessary, and there is no reason to consider this affidavit.[2]

---

[2] The court observes that even if the pending motion were converted to one for summary judgment, the affidavit fails to meet the standard for a Rule 56(d) affidavit. Rule 56(d) (formerly Rule 56(f)) "carries forward without substantial change the provisions of former subdivision (f)." *Dehring v. Keystone Shipping Co.*, No. 10-CV-13959, 2011 WL 5866258, at *4 n.4 (E.D. Mich. Nov. 3, 2011). The party who opposes the motion has the burden of showing the necessity of discovery, and "[t]he Rule 56(d) affidavit (or declaration) must 'identify the material facts it hopes to uncover pursuant to Rule 56(f).'" *Id*. at *4. The Baird affidavit does not meet this standard. "The party seeking additional discovery must 'affirmatively demonstrate . . . how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact.'" *McArthur v. Williams*, No. 2:10-CV-13652, 2012 WL 954740, at *7 (E.D. Mich. Mar. 1, 2012). Baird's affidavit merely sets out a series of facts, many of which are within his own personal knowledge. The affidavit fails to address what facts are not

(continued...)

5

<u>Motion to Strike – Rule 12(f)</u>

Federal Rule of Civil Procedure 12(f) permits a court to "order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." "Generally, motions to strike are disfavored and will be denied unless the allegations have 'no possible relation or logical connection to the subject matter of the controversy and may cause some form of significant prejudice to one or more of the parties to the action.'" *Mayes v. Envtl. Prot. Agency*, No. 3:05-CV-478, 2006 WL 2709237, at *4 (E.D. Tenn. Sept. 20, 2006) (quoting 5C Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1382 (3d ed. 2004)); *see also Scott v. Regions Bank*, No. 2:08-CV-296, 2010 WL 908790, at *3 (E.D. Tenn. Mar. 12, 2010) ("Striking pleadings is a drastic remedy and motions to strike pleadings are disfavored."). The Sixth Circuit Court of Appeals has noted that "the action of striking a pleading should be sparingly used by the courts. Its is a drastic remedy to be resorted to only when required for the purposes of justice." *Brown & Williamson Tobacco Corp. v. United States*, 201 F.2d 819, 822 (6th Cir. 1953). Motions to strike are a matter for the court's discretion. *Lincoln Elec. Co. v. Nat'l Standard, LLC*, No. 1:09 CV 1886, 2010 WL 1133861 (N.D. Ohio Mar. 22, 2010); *Safeco Ins. Co. of Am. v. Oakland Excavating Co.*, No. 08-CV-10546, 2009 WL 224687 (E.D. Mich. Jan. 30, 2009).

---

[2](...continued)
available and how discovery would uncover those facts.

III.

*Analysis*

**Contract of Adhesion**

The court will first address HRS's motion to dismiss Baird's claim that the PEOA is a contract of adhesion and unenforceable. HRS argues that the elements of a contract of adhesion are not present and the claim should be dismissed. Baird alleges that the Agreement is a "standardized contract form" "offered on essentially a 'take it or leave it' basis" without "a realistic opportunity to bargain."

> In *Buraczynski v. Eyring*, 919 S.W.2d 314 (Tenn. 1996), the Tennessee Supreme Court defined an adhesion contract as a "standardized contract form offered to consumers of goods and services on essentially a 'take it or leave it' basis, without affording the consumer a realistic opportunity to bargain and under such conditions that the consumer cannot obtain the desired product or service except by acquiescing to form of the contract." *Id*. at 320. A conclusion that contracts are contracts of adhesion, however, is not determinative of the contract's enforceability. *Id*. Rather, enforceability "generally depends upon whether the terms of the contract are beyond the reasonable expectations of an ordinary person, or oppressive or unconscionable." *Id*.

*Unique Shopping Network, LLC v. United Bank Card, Inc*., No. 3:10-CV-428, 2011 WL 2181959, at *5 (E.D. Tenn. June 3, 2011). The Court in *Buraczynski* also noted that "[c]ourts generally agree that the distinctive feature of a contract of adhesion is that the weaker party has no realistic choice as to its terms." *Buraczynski*, 919 S.W.2d at 320 (internal quotation marks and citation omitted).

In the counterclaim, Baird has offered nothing other conclusory allegations using key words such as "standardized contract form"; "take it or leave it"; and no "opportunity to bargain." The claim fails, however, to offer facts to substantiate why Mr. Baird had no opportunity to bargain for this service or why the terms were on a "take it or leave it" basis. There are no facts to show that this businessman had no realistic choice regarding the services he was obtaining.

In *Wilson Pharmacy, Inc. v. Gen. Computer Corp.*, No. E2000-00733-COA-R3-CV, 2000 WL 1421561 (Tenn. Ct. App. Sept. 21, 2000), the Tennessee Court of Appeals addressed a standardized contract for computer services that was submitted to the pharmacy owner on a take-it-or-leave-it basis. The court held:

> In the case at bar we do not believe the statements in the affidavit of Mr. Wilson that he did not know of any other computer corporation which would provide a comparable service, or the conclusory statement that he was offered a standardized contract "on a take-it-or-leave-it basis" are sufficient to show a contract of adhesion and repel the motion to dismiss.

*Id*. at *4. *Twombly* requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action, which is all Baird has offered.

In addition, even if the Agreement were a contract of adhesion, that would not end the inquiry or make it unenforceable. As noted above, enforceability generally depends upon whether the contract is beyond the reasonable expectations of an ordinary person, or whether it is oppressive or unconscionable. *Buraczynski*, 919 S.W.2d at 320.

8

The terms of the Agreement are not beyond the reasonable expectations of an ordinary person, in this case, a business person. Mr. Baird is the President of Baird Tree Company, and he was acting on behalf of his company when he entered into this contract. He does not allege facts that would explain why as a businessman the contract language was beyond his understanding. "The law imparts on parties to a contract to learn the contents and stipulations of a contract before signing it, and signing it without learning such information is at the party's own peril." *Philpot v. Tenn. Health Mgmt., Inc.* 279 S.W.3d 573, 581 (Tenn. Ct. App. 2007). Nor is the Agreement oppressive. Both sides have rights and responsibilities and each receives benefits under the Agreement. Baird's assertion that the Agreement is unconscionable also fails. Tennessee recognizes two types of unconscionability:

> Unconscionability may arise from a lack of a meaningful choice on the part of one party (procedural unconscionability) or from contract terms that are unreasonably harsh (substantive unconscionability). In Tennessee we have tended to lump the two together and speak of unconscionability resulting when the inequality of the bargain is so manifest as to shock the judgment of a person of common sense, and where the terms are so oppressive that no reasonable person would make them on one hand, and no honest and fair person would accept them on the other.

*Trinity Indus., Inc. v. McKinnon Bridge Co., Inc.*, 77 S.W.3d 159, 170-71 (Tenn. Ct. App. 2001) (citation omitted). The allegations in the counterclaim and the terms of the Agreement do not meet this standard. The facts alleged do not show Baird lacked a meaningful choice when it entered the Agreement with HRS, and the terms are not oppressive. Therefore, Baird's claim that the Agreement is an unenforceable adhesion contract fails.

9

### "Guarantee" Provision

HRS moves to dismiss Baird's claim for declaratory relief regarding the enforceability of the guaranty provision in the Agreement. Using terms like "unlawful," "unfair," "fraudulent," "unenforceable," and "unconscionable," Baird alleges that the guaranty Bobby Baird signed in the PEOA is "void against public policy in the State of Tennessee" and should be rendered without force and effect. Baird also alleges that because HRS made "unilateral attempts to insert a Guarantee" the provision is void.

Guaranty agreements are like other contracts and are "construed according to the ordinary meaning of the wordage used and with the view to carry out the intent as therein expressed." *Amtax Holdings 285, LLC v. Opportunity Builders, Inc*., No. 07-CV-1191, 2009 WL 331419, at *5 (W.D. Tenn. Feb. 9, 2009) (citation omitted). "The cardinal rule for interpretation of contracts is to ascertain the intention of the parties and to give effect to that intention, consistent with legal principles. The intent of the parties is presumed to be that expressed in the body of the contract." *Id*. (internal quotation marks and citations omitted). "Guaranties on a commercial contract are special contracts under Tennessee law. In order to facilitate the extension of credit, Tennessee does not favor guarantors and will construe a guaranty against the guarantor as strongly as the language will permit." *Suntrust Bank v. Dorrough*, 59 S.W.3d 153, 156 (Tenn. Ct. App. 2001).

The guaranty calls for Bobby Baird to be responsible for all payments not made by Baird Tree Company and to perform all obligations not fulfilled by Baird Tree Company. Bobby Baird is the President of Baird Tree Company, the client receiving the services from

10

HRS. His signature appears immediately under paragraph 31, which contains the guaranty provision, so it is presumed he read it and knows the contents. *84 Lumber Co. v. Smith*, 356 S.W.3d 380, 383 (Tenn. 2011) (person signing contract is presumed to have read it and is bound by the contents);*Creative Resource Mgmt., Inc. v. Soskin*, No. 01A01-9808-CH-00016, 1998 WL 813420, at *3 (Tenn. Ct. App. Nov. 25, 1998). The guaranty was not inconspicuous or hidden in the Agreement, and the typeface and format of the paragraph containing the provision is identical to the remainder of the Agreement. *Cf. id*. ("[W]e do not find the location of the personal guaranty language inappropriate. The guaranty language of paragraph VII(d) is not inconspicuous and hidden but rather in the same format as all of the other provisions of the contract.").

Baird has not pled sufficient facts to make the guaranty a contract of adhesion. Again, Baird's allegations are filled with conclusory statements rather than specific facts to support its claim. Baird's reference to HRS's "unilateral attempts to insert a Guarantee Provision" is somewhat unclear since the guaranty is in fact in the Agreement. To the extent that inclusion of the guaranty was only on the insistence of HRS, that alone is not improper or unconscionable. Further, Baird has not alleged facts to show that it had no meaningful choice other than this agreement such that it could have walked away from the contract. Baird has not alleged sufficient facts to make a claim for declaring the guaranty provision unenforceable, and the claim will be dismissed.

11

## Jury Demand

HRS has moved to strike Baird's jury demand in the counterclaim based on the jury trial waiver in the PEOA. A motion to strike a jury demand is properly brought pursuant to Rule 12(f). *See Starnes Family Office, LLC v. McCullar*, 765 F. Supp. 2d 1036, 1055 (W.D. Tenn. Jan. 28, 2011). Contracting parties may waive their right to a jury trial, but the waiver must be knowing and voluntary. *K.M.C. Co., Inc. v. Irving Trust Co.*, 757 F.2d 752, 75-56 (6th Cir. 1985). In this case, the Agreement contains the following at paragraph 21:

> The parties hereby agree: a) not to elect a trial by jury of any issue triable of right by a jury; and b) waive any right to trial by jury to the extent that any such right shall not or hereafter exist. This waiver of right to trial by jury is separately given, *knowingly and voluntarily*, as to which the right to a jury trial would otherwise accrue. Further, Client [Baird] hereby certifies that no representative or agent of HR Solutions of America LLC has represented, expressly or otherwise, that HR Solutions of America LLC will not seek to enforce this waiver of right to jury trial provision. (emphasis added).

Bobby Baird signed the Agreement as President of Baird Tree Company. "It is a bedrock principle of contract law that an individual who signs a contract is presumed to have read the contract and is bound by its contents." *84 Lumber Co.*, 356 S.W. 3d at 383(citing *Giles v. Allstate Ins. Co.*, 871 S.W.2d 154, 157 (Tenn. Ct. App. 1993) ("[O]ne is under a duty to learn the contents of a written contract before he signs it, and that if, without being the victim of fraud, he fails to read the contract or otherwise to learn its contents, he signs the same at his peril, and is estopped to deny his obligations, will be conclusively presumed to know the contents of the contract, and must suffer the consequences of his own

12

negligence.")).  "Parties who sign contracts are presumed to know the contents of the documents they sign."  *Creative Resource Mgmt.*, 1998 WL 813420, at *3.  The demand for a jury trial is stricken.


## Tennessee Consumer Protection Act

Baird asserts a claim under the Tennessee Consumer Protection Act ("TCPA") alleging basically that in connection with the PEOA  HRS took its money and represented that it would loan employees to Baird and maintain full control over them.  Baird also alleges that HRS represented that it would comply with the FLSA and the IRCA.  For its TCPA claim Baird relies in part on the catch-all provision of the Act, Tenn. Code Ann. § 47-18-104(27), "Engaging in any other act or practice which is deceptive to the consumer or to any other person."[3]  HRS argues that the claim is time barred, as the PEOA was entered into April 28, 2009, and effective May 1, 2009.

There is a one-year statute of limitations applicable to TCPA claims.

Any action commenced pursuant to § 47-18-109 shall be brought within one (1) year from a person's discovery of the unlawful act or practice, but in no event shall an action under § 47-18-109 be brought more than five (5) years after the date of the consumer transaction giving rise to the claim for relief.

---

[3] This provision has been amended by the Tennessee Legislature, so that its enforcement is now "vested exclusively in the office of the attorney general and reporter and the director of the division."  Tenn. Code Ann. § 47-18-104(27).  However, "[t]he amendments to the TCPA apply to liability actions that accrue after October 1, 2011."  *In re Martin*, No. 08-52631, 2012 WL 2317767, at *9 n.4 (Bankr. E.D. Tenn. June 19, 2012).  Thus, the section is still available to Baird.

13

Tenn. Code Ann. § 47-18-110.

A cause of action under the TCPA "accrues when the action giving rise to the claim is discovered." *Heatherly v. Merrimack Mut. Fire Ins. Co.*, 43 S.W.3d 911, 916 (Tenn. Ct. App. 2000). "Under [the discovery] rule, a cause of action accrues when the plaintiff knows or in the exercise of reasonable care and diligence should know that an injury has been sustained as a result of wrongful or tortious conduct by the defendant." *John Kohl & Co. P.C. v. Dearborn & Ewing*, 977 S.W.2d 528, 532 (Tenn. 1998) (citations omitted). "While a prerequisite to the running of the statute of limitations is plaintiff's reasonable knowledge of the injury, its cause and origin, a plaintiff is not entitled to delay filing until all injurious effects or consequences of the actionable wrong are actually known." *Wyatt v. A-Best, Co., Inc.*, 910 S.W.2d 851, 855 (Tenn. 1995) (citations omitted).

Baird argues basically that it could not have had knowledge of the injury until the events between it and HRS started to unfold during this litigation. This issue is before the court on a motion to dismiss. Because of the discovery rule, the court cannot definitively state that the claim is time barred. That determination will require factual development. Therefore, HRS's motion to dismiss the TCPA claim will be denied.

### Intentional Misrepresentation

HRS moves to dismiss Baird's claims for intentional misrepresentation. HRS contends that the claim for intentional misrepresentation has not been properly pled under

Tennessee law.[4] In its response, Baird just argues that a "fair reading" of the counterclaim shows that the heightened pleading standard of Fed. R. Civ. P. 9(b) has been met and in a massive footnote quotes extensively from the lengthy counterclaim.

To state a claim for intentional misrepresentation or fraud, a plaintiff must allege facts to support the following:

> 1) the defendant made a representation of an existing or past fact; 2) the representation was false when made; 3) the representation was in regard to a material fact; 4) the false representation was made either knowingly or without belief in its truth or recklessly; 5) plaintiff reasonably relied on the misrepresented material fact; and, 6) plaintiff suffered damages as a result of the misrepresentation.

*Biancheri v. Johnson*, Nos. M2008-00599-COA-R3-CV, M2007-02861-COA-R3-CV, 2009 WL 723540, at *7 (Tenn. Ct. App. Mar. 18, 2009). The party asserting a claim of fraud must plead "with particularity" the circumstances that comprise the fraudulent conduct. Fed. R. Civ. P. 9(b). Pursuant to Rule 9(b), a plaintiff must "allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Gilliard v. Recontrust Co.*, N.A., No. 1:11-cv-331, 2012 WL 4442525, at *10 (E.D. Tenn. Sept. 25, 2012) (citation omitted).

---

[4] HRS also argues that certain allegations are barred from consideration by the parol evidence rule. However, the most recent statement from a Tennessee Court is that "the rule *does not apply* to claims of fraudulent misrepresentation in inducement of a contract." *Biancheri v. Johnson*, Nos. M2008-00599-COA-R3-CV, M2007-02861-COA-R3-CV, 2009 WL 723540, at *9 n.9 (Tenn. Ct. App. Mar. 18, 2009) (emphasis in original) (citing *Brungard v. Caprice Records, Inc*., 608 S.W.2d 585, 588 (Tenn. Ct. App 1980); *Lipford v. First Family Fin. Servs., Inc*., No. W2003-01208-COA-R3-CV,2004 WL 948645, at *4 (Tenn. Ct. App. Apr. 29, 2004)).

15

There are two identifiable places in the rambling and verbose counterclaim where there is an identifiable allegation of intentional misrepresentation and false information. These are connected with references to the FLSA and the Immigration Reform and Control Act of 1986 ("IRCA").[5] In paragraph 6, after allegations concerning breach of the PEOA and violation of the obligation of good faith and fair dealing, Baird makes allegations about the deceptive acts or practices of "representatives, agents, servants, and employees" and their "unfair or deceptive acts or practices" that HRS would ensure compliance with the FLSA. Baird alleges the same representatives, etc. falsely informed Baird that HRS would ensure compliance with the FLSA and that Baird justifiably relied on the representation, and therefore, HRS is "also guilty of Intentional and/or Negligent misrepresentation."

This is insufficient to state fraud against HRS. The use of conclusory term as "deceptive acts" does not specifically set out how HRS had a fraudulent intent or scheme in the alleged misrepresentation. Further, there is no reference to the time and place of the alleged misrepresentation, nor is there any allegation of how Baird has been injured or damaged by any such misrepresentation.

The same is true for any intentional misrepresentation connected with the IRCA. Baird again alleges that HRS "representatives, agents, servants, and employees" falsely informed it that HRS would ensure compliance with the IRCA and that plaintiff were

---

[5] The lengthy quotation Baird offers in defense of the counterclaim, a portion of paragraph 5, does not plead intentional misrepresentation nor does it reference the claim.

16

legal residents and that Baird justifiably relied on that representation, so HRS is "also guilty of Intentional and/or Negligent misrepresentation."

Baird has failed to identify any fraudulent intent by HRS and has not set out any time or place for the alleged misrepresentation. Baird has also failed to alleged how it has been injured or damaged by any such misrepresentation. This allegation of intentional misrepresentation or fraud fails as well.

### Negligent Misrepresentation

As noted above, Baird asserted intentional and/or negligent misrepresentation in the allegations discussed above. For the reasons that follow, the negligent misrepresentation claims also fail.

In the context of business transactions, as this situation is, a plaintiff must show the following elements:

> (1) the defendant is acting in the course of his business, profession, or employment, or in a transaction in which he has a pecuniary (as opposed to gratuitous) interest; and

> (2) the defendant supplies false information meant to guide others in their business transaction; and

> (3) the defendant fails to exercise reasonable care in obtaining or communicating the information; and

> (4) the plaintiff justifiably relies upon the information.

*Roopchan v. ADT Sec. Sys., Inc.*, 781 F. Supp. 2d 636, 654 (E.D. Tenn. 2011) (citation omitted). Additionally, "the false information must 'consist of a statement of a material past

or present fact.'" *Id*. (citing *McElroy v. Boise Cascade Corp*., 632 S.W.2d 127, 130 (Tenn Ct. App. 1982)). Thus, "statements of opinion or intention are not actionable," and "representations concerning future events are not actionable even though they may later prove to be false." *Id*. (quoting *McElroy*, 632 S.W.2d at 130.

The alleged negligent misrepresentations by HRS are statements of intention or representations of future events, not present or past facts. Baird alleges HRS said it "would ensure compliance" with the FLSA and the IRCA. This involves future action and intention on the part of HRS. This conduct does not represent an existing past or present fact. On that basis, Baird has failed to state a claim for negligent misrepresentation.

## Breach of Contract Claims

In its initial statement, HRS argues that the breach of contract claims should be dismissed or stricken. The court has set out above the standard for a motion to strike and the fact that such motions are disfavored. The court has reviewed the breach of contract claims and finds no basis for striking them. Accordingly, with the exception of the demand for a jury, the motion to strike will be denied.

## FLSA Claims

HRS argues that the breach of contract claims based upon its alleged violation of the FLSA should be dismissed because the allegations contradict the face of the PEOA and do not include an allegation of damages. Baird in response to the damages contention cites

18

in a footnote the portion of the indemnification clause dealing with the terms of indemnification agreed to by HRS. Baird also argues that because the plaintiffs filed suit against HRS, that "proves on its face" HRS breached the contract regarding the FLSA.

The last paragraph of the PEOA, paragraph 37 titled ENTIRE AGREEMENT, states as follows:

> This Agreement constitutes the entire agreement between the parties with regard to this subject matter and supersedes any and all agreements, whether oral or written between the parties with respect to its subject matter. Client [Baird] acknowledges that it has not been induced to enter into this Agreement by any representation or warranty not set forth in this Agreement including but not limited to any statement made by an employee or marketing agent of HR Solutions of America LLC. Client [Baird] acknowledges that HR Solutions of America LLC has made no representation that HR Solutions of America LLC's services will improve the performance of Client's [Baird's] business.

The Agreement also specifically stated the services that HRS would provide, which are listed as follows:

> 4. SERVICES
>
> HR Solutions of America LLC will provide only the services set forth herein and will not provide any other services, including but not limited to the making of decisions related to strategic, operational or other matters concerning [Baird's] business. . . .
>
> a. HR Solutions of America LLC shall assume responsibility for paying wages to worksite employees, collecting and paying employment-related taxes (including those pertaining to the Federal Insurance Contributions Act, Federal Unemployment Tax Act, the applicable Income tax withholding, and State Unemployment Insurance).

19

b. During the term of this Agreement, HR Solutions of America LLC agrees to procure and maintain workers' compensation insurance coverage for each worksite employee hereunder.

c. HR Solutions of America LLC will provide a staff employee to set up a safety program for each client to prevent workers comp incidents. The program will also benefit you as the worksite employer because it is OHSA compliant. The cost of our safety program is the only cost not included in your base rate.

No where in the PEOA does it state nor does HRS agree to assume exclusive responsibility for the FLSA as alleged by Baird. Thus, HRS contends this cannot be a basis for a breach of the agreement. The PEOA makes clear that each party has responsibilities regarding the reporting and payment of employee wages and that each party has agreed to be responsible for and to comply with the FLSA.

HRS also contends that other allegations for breach of contract regarding the FLSA should be dismissed because they contradict the face of the Agreement. Baird asserts that HRS breached the Agreement because it failed to provide expertise and guidance for compliance with the FLSA. This is not a service listed or referenced in the Agreement that HRS agreed to provide.

As noted above, this Agreement contains a merger clause. "A completely integrated agreement must be interpreted on its face, and thus the purpose and effect of including a merger clause is to preclude the subsequent introduction of evidence of preliminary negotiations or of side agreements in a proceeding in which a court interprets the document." *Sec. Watch, Inc. v. Sentinel Sys., Inc.*, 176 F.3d 369, 372 (6th Cir. 1999).

20

Much like the parol evidence rule, an integration clause limits the evidence available to parties should a dispute arise over contract interpretation. It precludes a party from relying upon any alleged representations made prior to the execution of the contract containing the integration clause in interpreting that contract. . . . A contract's inclusion of an integration clause creates a strong presumption that a contract is as it purports to be, a fully integrated agreement" and "will conclusively establish that the contract is final and complete.

*Exxon Mobil Oil Corp. v. Thomas*, No. 3:05-CV-102, 2006 WL 3511141, at *4 (E.D. Tenn. Dec. 4, 2006) (internal quotation marks and citation omitted).

The Agreement, interpreted on its face, specifically identifies the services that HRS will provide in relation to the FLSA. It does not state HRS will be exclusively responsible for the FLSA nor does it state that HRS will provide the services Baird has alleged in its counterclaim at paragraph four, guidance for government compliance, audit training, keeping Baird abreast of changes in the law etc. Thus, a breach of contract based on these allegations cannot stand and will be dismissed.

To the extent Baird that has stated a claim for breach based upon HRS's alleged failure to comply with FLSA based upon HRS's specific responsibilities under the PEOA as related to the FLSA, such claim remains. It's determination is directly related to the outcome of the plaintiffs' claims against the defendants and the evaluation of what Baird's and HRS's responsibilities are pursuant to the Agreement.

## The IRCA

HRS argues that the claim for breach of contract based upon its alleged failure to comply with the IRCA should be stricken. In response, Baird merely argues the standard for a motion to strike and states there are material issue of fact as called for in a motion for summary judgment. As noted above, the court is not inclined to strike the pleadings, and this is not a motion for summary judgment. The court will consider the allegations based on a motion to dismiss.

Baird alleges that HRS failed to comply with the IRCA and failed to utilize its expertise and give guidance to ensure the plaintiffs were legal residents of Tennessee and the United States.[6] The Agreement states *inter alia* that HRS agreed to be responsible for and to comply with "Section 1324(b) of the Immigration Reform and Control Act of 1986, *assuming that Client [Baird] provided to HR Solutions of America LLC all necessary and accurate documentation required by law*." (emphasis added).

Nothing in the agreement calls for HRS to provide "expertise" or "guidance" to Baird. Based upon the presence of the merger clause, the Agreement is interpreted on its face. Thus, no breach of contract claim can be based upon any failure to provide expertise or guidance. Further, HRS did not have sole responsibility for compliance with the IRCA as Baird had a duty to provide accurate documentation.

---

[6] Since the counterclaim and motion to dismiss/strike have been filed, the court has confirmed the order of the magistrate judge that the immigration status of the plaintiffs in this case is not discoverable or relevant [docs. 86, 87].

In addition, Baird has failed to plead a basic element of a breach of contract claim, damages. "[T]he basic elements of a breach of contract case under Tennessee law must include (1) the existence of a contract, (2) breach of the contract, and (3) damages which flow from the breach." *Life Care Ctrs. of Am. Inc. v. Charles Town Ass'n Ltd. P'ship*, 79 F.3d 496, 514 (6th Cir. 1996). Baird's breach of contract claim based on the IRCA will be dismissed.

## Workers' Compensation Claims

Baird alleges that HRS breached the PEOA by not properly administering workers' compensation claims. HRS has moved to dismiss the claim contending that the allegations are insufficient.

The PEOA calls for HRS to "procure and maintain workers' compensation insurance coverage for each worksite employee." Baird alleges in the counterclaim that HRS did not properly administer workers' compensation claims on behalf of Baird in that HRS billed Baird for disability benefits which HRS should have otherwise paid. As a result, Baird "suffered monetary losses."

In the court's opinion, this is sufficient to state a claim. HRS allegedly improperly billed disability benefits, which resulted in monetary losses, i.e., damages stemming from the breach. Therefore, HRS's motion to dismiss on this basis will be denied.

23

## Failure to Cooperate

The PEOA contains the following at paragraph 23 titled COOPERATION:

> If a worksite employee or a government agency or entity files any type of claim, lawsuit or charge against HR Solutions of America LLC, Client [Baird] or both, alleging a violation(s) of any law or failure to do something which was otherwise required by law, Client [Baird] and HR Solutions of America LLC shall each cooperate with the other's defense of such claim, lawsuit or charge. HR Solutions of America LLC and Client [Baird] will make available to each other upon request any and all documents that either party has in its possession which relate to any such claim, lawsuit or charge. However, neither party shall have the duty to cooperate with the other if the dispute is between the parties themselves, nor shall this provision preclude the raising of cross claims or third party claims between Client [Baird] and HR Solutions of America LLC, if the circumstances justify such proceedings. The parties agree that this provision shall survive the termination of this Agreement.

HRS has moved to dismiss the breach of contract claim based upon its alleged failure to cooperate with Baird regarding plaintiffs' claims. HRS argues that Baird cannot prevail because it breached the cooperation provision first. Baird alleges in the counterclaim that HRS negotiated concessions with the plaintiffs not to name HRS as a defendant and that HRS aided and abetted plaintiffs in preparing their cause of action against Baird in violation of the PEOA. Baird also alleges that HRS represented to Baird that it would not take a position regarding the lawsuit filed by the plaintiffs but then "paired up with the attorneys for the Plaintiffs against" Baird in violation of the PEOA.

Baird's allegations are sufficient to state a claim for violation of the cooperation provision set forth above. Whether Baird or HRS first breached the agreement is an issue to be decided at a later time. Therefore, HRS's motion to dismiss as it relates to

24

Baird's breach of contract claim for failure to cooperate under the Agreement will be denied.

## Arbitration Clause

Baird claims a breach of the PEOA because HRS allegedly refused to arbitrate. HRS argues the claim should be dismissed for a variety of reasons, much of its argument, however, is only within the knowledge of counsel and not in the record.

The Agreement contains an arbitration clause that provides for dealing with disputes between the parties. Either party may elect to arbitrate by serving notice on the other party, but once a party elects arbitration, it is binding on both parties. An arbitrator is selected from a panel in Knoxville, Tennessee provided by the American Arbitration Association or a similar entity shall resolve the dispute. The arbitration clause also states, "The Commercial Arbitration Rules of the American Arbitration Association and the Federal Arbitration Act shall be applied to and govern the arbitration. The arbitrator's decision shall be final, conclusive and binding, except as permitting by the Federal Arbitration Act."

Baird needs to pursue its failure to arbitrate claim in an action brought under the Federal Arbitration Act ("FAA"), not in this counterclaim. Therefore, the court will dismiss the arbitration claim without prejudice to Baird bringing an arbitration suit under the FAA.

**Good Faith and Fair Dealing**

HRS has moved to dismiss Baird's claims based upon a breach of the covenant of good faith and fair dealing. Baird makes several allegations which it contends are breaches of the contractual obligation.

A "[b]reach of the implied covenant of good faith and fair dealing is not an independent basis for relief." *Duke v. Browning-Ferris Indus. of Tenn., Inc.*, No. W2005-00146-COA-R3-CV, 2006 WL 1491547, at *9 (Tenn. Ct. App. Nov. 13, 2006) (quoting *Solomon v. First Nat'l Bank*, 774 S.W.2d 935, 945 (Tenn. Ct. App. 1989)); *see also Lyons v. Farmers Ins. Exchange*, 26 S.W.3d 888, 894 (Tenn. Ct. App. 2000) (breach of covenant of good faith and fair dealing not cause of action in and of itself but part of breach of contract cause of action). To the extent Baird has alleged claims for breach of good faith and fair dealing, they will be dismissed.

IV.

*Conclusion*

Accordingly, for the reasons set forth above, HRS's motion to dismiss and motion to strike will be granted in part and denied in part. The claims Baird and HRS have asserted against each other, HRS's crossclaim against both Baird defendants [doc. 61] and Baird's counterclaim against HRS [doc. 74], will be tried before the court not a jury. Therefore, they will tried separately from plaintiffs' claims. A scheduling order setting a trial date for the crossclaim and counterclaim will be issued. An order consistent with this

26

opinion will be entered.

ENTER:

_____s/ Leon Jordan_____
United States District Judge